**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| DANA DOOREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV79 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Dana Doorey, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 8, 10; see also Docket Entry 9 (Plaintiff's Memorandum); Docket Entry 11 (Defendant's Memorandum); Docket Entry 12 (Plaintiff's Reply). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging a disability onset date of January 15, 2014. (Tr. 238-41.) Upon denial of that application initially (Tr. 77-91, 120-28) and on reconsideration (Tr. 92-116,

130-37), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 138-39). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 48-76.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-32). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 235-37), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2019.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since January 15, 2014.
>
> 3. [Plaintiff] has the following severe impairments: somatoform disorder, anxiety disorder, panic disorder, major depressive disorder, personality disorder with borderline and narcissistic features, fibromyalgia, right knee degenerative joint disease, postural orthostatic tachycardia syndrome (POTS), obstructive sleep apnea, reactive airway disease, and perceived electromagnetic hypersensitivity.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except she can occasionally climb ramps and stairs, but should never

2

climb ladders, ropes or scaffolds. She must avoid hazards including heights and large moving machinery and she must avoid exposure to fumes and odors. She is capable of simple, routine tasks but no fast-paced, high volume workloads. She can perform tasks that can be performed independently rather than in a group. She is capable of occasional interaction with coworkers and supervisors, but should have no interaction with the general public. In addition, she would need the option to sit every 30 minutes for about 1 to 2 minutes but could continue working while seated.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from January 15, 2014, through the date of this decision.

(Tr. 17-31 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignment of Error

In Plaintiff's first and only issue on review, she argues that "[t]he ALJ's decision violates Bird[ v. Commissioner, 699 F.3d 337, 343 (4th Cir. 2012)]" (Docket Entry 9 at 4 (bold font omitted)), because the ALJ "fail[ed] to accord substantial weight to the [United States Department of Veterans Affairs ('VA')] decision finding [Plaintiff] disabled" (id. at 6 (referencing Tr. 28, 956)). According to Plaintiff, "[t]he ALJ did not justify deviation from this standard by providing 'persuasive, specific and valid reasons for doing so'" (id. (quoting Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018))), but "instead accord[ed] [the VA decision] less weight because [the VA and SSA] programs are 'based on a different set of regulations'" (id. (quoting Tr. 28, and citing, inter alia, Northen v. Colvin, No. 1:15CV445, 2016 WL 5956636, at *5 (M.D.N.C. Oct. 12, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 9, 2016) (Schroeder, J.))). Plaintiff maintains that "[t]he error by the ALJ is particularly harmful

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

because the 100 percent disabled rating for [Plaintiff's] mental disorders and its reasons for assigning that percentage are substantiated by the medical record and the testimony at the hearing." (Id. at 8 (citing Tr. 64, 65, 395-99, 425, 426, 430, 431-32, 441, 455, 456-57, 462, 466, 492, 700, 702, 757, 759, 834, 835, 836, 939, 968, 969, 1028, 1080, 1304, 1627, 1636, 1731, 1771, 1794-95, 1935, 1937, 1950, 1964, 1981-82, 2028, 2040, 2043, 2051, 2071, 2072, 2076, 2084, 2086-87, 2091, 2162, 2167, 2189).) Plaintiff's contentions have merit and warrant remand.

On March 9, 2015, the VA issued a 100 percent disability rating effective December 1, 2014, for Plaintiff's "[d]epressive disorder also diagnosed as PTSD, anxiety with symptoms of phobia" based upon multiple symptoms, including "[i]ntermittent inability to perform maintenance of minimal personal hygiene," "[d]ifficulty in adapting to stressful circumstances," "[s]uicidal ideation," "[n]ear continuous depression affecting the ability to function independently, appropriately and effectively," "[i]mpaired impulse control," "[d]ifficulty in establishing . . . work and social relationships," "[d]isturbances of motivation and mood," "[i]mpaired judgment," "[p]anic attacks (weekly)," "[m]ild memory loss," "[c]hronic sleep impairment," "[a]nxiety," and "[s]uspiciousness." (Tr. 954, 956.) The VA indicated that it based its 100 percent disability rating, in part, on the assessment of Dr. Thomas B. Toy (see Tr. 956), who completed a Mental

9

Disorders Disability Benefits Questionnaire on December 6, 2014 (Tr. 395-99), diagnosing Plaintiff with Major Depressive Disorder, Generalized Anxiety Disorder, and PTSD, and assigning Plaintiff a Global Assessment of Functioning ("GAF") score of 30 (see Tr. 395).[5] The VA noted that a GAF range of 21 to 30 "indicates behavior is considerably influenced by delusions or hallucinations; or serious impairment in communications or judgment; or inability to function in all areas." (Tr. 956.) Dr. Toy further found Plaintiff "an extremely emotionally fragile woman who can, under stress, become psychologically fragmented" and who "need[s ] intensive psychotherapy." (Tr. 399.)

A short time later, on August 7, 2015, the VA issued a disability rating effective March 18, 2015, for Plaintiff's physical and mental impairments, including the following:

- obstructive sleep apnea – 50 percent

- fibromyalgia – 40 percent

- cervical strain – 20 percent

- left upper extremity radiculopathy affecting the lower radicular group – 20 percent

- lumbar strain – 10 percent

- residuals of sprained right ankle – 10 percent

---

[5] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000). A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

- temporomandibular joint syndrome ("TMJ") - 10 percent

- depressive disorder also diagnosed as PTSD, anxiety with symptoms of phobia - continued at 100 percent

- special monthly compensation granted based on meeting housebound criteria

(Tr. 378-79.)

In evaluating the VA's disability ratings, the ALJ stated as follows:

> [Plaintiff] is receiving disability benefits through the VA which became effective in December 2014, for events connected to her military service. The [ALJ] gives this finding little weight because such statements are not medical opinions, but are instead, administrative findings <u>based on a different set of regulations</u> and considered in connection with [Plaintiff's] service in the armed forces. In addition, the finding of disability under [the SSA's] regulation is an issue reserved for the Commissioner.

(Tr. 28 (emphasis added) (internal citations omitted).) The ALJ also accorded "little weight" to Dr. Toy's opinions, in part, because "the VA's disability requirements are <u>based [on] a different set of regulations</u> and are considered in connection with [Plaintiff's] service in the armed forces." (<u>Id.</u> (emphasis added).)

In <u>Bird</u>, the United States Court of Appeals for the Fourth Circuit addressed for the first time the "weight that the SSA must afford to a VA disability rating." <u>Bird</u>, 699 F.3d at 343. The

11

court observed the similarities between the evaluation of disability by the VA and the SSA:

> [B]oth the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability. "Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims."

Id. (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)) (internal citation omitted).

After reviewing the "varying degrees of evidentiary significance" other circuits afford VA disability ratings, the Fourth Circuit held as follows:

> The VA rating decision reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. <u>Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency</u>. Thus, we hold that, in making a disability determination, the SSA must give <u>substantial weight</u> to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added). Following Bird, the Fourth Circuit further clarified "what an ALJ must do" to clearly

12

demonstrate the appropriateness of a deviation from <u>Bird</u>'s substantial weight standard:

> We now conclude, consistent with our sister circuits, that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to a[ ] disability decision, an ALJ must give "<u>persuasive, specific, valid reasons for doing so that are supported by the record</u>."

<u>Woods</u>, 888 F.3d at 692 (quoting <u>McCartey</u>, 298 F.3d at 1076) (emphasis added).

Here, the ALJ's consideration of Plaintiff's VA disability ratings runs afoul of <u>Bird</u> and <u>Woods</u>. The ALJ's statement that the VA's disability ratings "are not medical opinions, but are instead, administrative findings <u>based on a different set of regulations</u>" (Tr. 28 (emphasis added)) disregards <u>Bird</u>'s holding to the contrary that, "[b]ecause the purpose and evaluation methodology of both programs are <u>closely related</u>, a disability rating by one of the two agencies is <u>highly relevant</u> to the disability determination of the other agency," <u>Bird</u>, 699 F.3d at 343 (emphasis added). Moreover, in <u>Woods</u>, the Fourth Circuit expressly rejected the ALJ's rationale for rejecting a state agency Medicaid disability determination that the agency utilized different standards, noting that such a "generic explanation, which could apply to every [state agency Medicaid] decision, [wa]s neither persuasive nor specific." <u>Woods</u>, 888 F.3d at 693; <u>see also</u> <u>Northen</u>, 2016 WL 5956636, at 85 ("As this Court has previously explained, citing to different rules and different standards as a rationale to give less than substantial

13

weight to a VA disability determination is not enough, because such a rationale would apply to every case, and thus cannot clearly demonstrate a reason for departing from the *Bird* presumption.").

The Commissioner defends the ALJ's reasoning for rejecting the VA's disability ratings, arguing that "the ALJ spent seven pages scrupulously reviewing the medical evidence," and that such "evidence was sufficient to discount the VA disability rating." (Docket Entry 11 at 4 (citing Tr. 20-27).) In that regard, the Commissioner points to the fact that the ALJ credited the opinion from June 15, 2016, of Plaintiff's treating psychiatrist, Dr. Robert Fleury, who "opined that Plaintiff had no limitation in her ability to understand, remember, and carry out short, simple instructions, and only moderate limitation in her ability to handle detailed instructions; interact with co-workers and the public; and deal with work stresses and routine workplace changes." (Id. (citing Tr. 27, 1038-39).) The Commissioner additionally argues that "the VA disability rating conflicted significantly with treatment notes discussed by the ALJ," such as descriptions of Plaintiff as "well-appearing" (id. at 5 (citing Tr. 22-23, 431, 465, 500, 502, 504, 507, 509, 512, 519, 531, 972, 978, 998, 1004, 1006, 1044, 1048, 1053)) and as having "normal memory" (id. (citing Tr. 22-23, 1201, 1214, 1221, 1480, 1492, 1503, 1512, 1523, 1536, 1548, 2037, 2042, 2050, 2053)).

14

However, "the administrative decision in this case lacks any of the explanation included in [the Commissioner's] brief, and the Commissioner's attempt to supply it after-the-fact fails to remedy the ALJ's omission." Northen, 2016 WL 5956636, at *5. As Plaintiff contends in her Reply, the Court "cannot engage in post hoc rationalization" to find substantial evidence to support the ALJ's decision to discount the VA's disability ratings (Docket Entry 12 at 2). See Securities & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (holding that courts must review administrative decisions on the grounds upon which the record discloses the agency relied); Radford v. Colvin, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting the Commissioner's argument in part as "a post[-]hoc rationalization") (citing Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012)); Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the [ALJ] may have been thinking." (citing Chenery, 332 U.S. at 196)).

The Commissioner additionally contends that "[t]he VA issued its rating in March 2015" but "the adjudicated period in Plaintiff's Social Security claim extended over two years later." (Docket Entry 11 at 5.) Thus, the Commissioner contends that

15

"[t]he VA's rating pre-dates [Dr. Fleury's June 15, 2016 opinion], as well as other evidence demonstrating improvement in the Plaintiff's condition." (Id. (citing Tr. 23, 1056, 1060, 1064, 1076).) This argument fails for two reasons.

First, as Plaintiff argues, "an ALJ explaining how new evidence available at the [] hearing demonstrates changed circumstances from when the VA disability decision was issued could constitute justification for giving less weight to the VA disability rating – but the ALJ must explain this in her decision." (Docket Entry 12 at 3 (quoting Woods, 888 F.3d at 693 ("This list [of ways an ALJ could explain assigning less than substantial weight to an agency's disability rating] is not exclusive, but the point of this requirement – and of these examples – is that the ALJ must adequately explain h[er] reasoning; otherwise, we cannot engage in meaningful review.").) The ALJ's decision here does not expressly rely on improvement in Plaintiff's condition to justify departure from the substantial weight standard.

Second, the sporadic examples the Commissioner cites as evidence of alleged "improvement in Plaintiff's condition" (Docket Entry 11 at 5 (citing Tr. 1056, 1060, 1064, 1076)) do not appear sufficient to offset the overwhelming contrary evidence, relied on by Plaintiff, of deterioration in her mental condition following the VA's disability ratings in March and August of 2015 (see Docket Entry 9 at 10-12 (citing, inter alia, Tr. 1304-10, 1627-28

16

(Plaintiff's involuntary commitment in September 2015 after ingesting pills with an admission GAF of 22), 1794-95 (Plaintiff's report in April 2016 that she had "multi-chemical syndrome," could not tolerate strong smells, new carpets, new paint, glue, mold, or smoke, and had moved 22 times in two years due to that syndrome), 2076-78 (Plaintiff's emergency room treatment in October 2016 after a suicide attempt), and 2084-99 (Plaintiff's involuntary commitment in October and November 2016 reflecting her continued reports that she could not tolerate chemicals, sound, touch, and electricity, and could not live in any homes with electricity))). At a minimum, the Court cannot conclude that the evidence would have required the ALJ to discount the VA disability rating.

Under such circumstances, Plaintiff has demonstrated that the ALJ committed prejudicial error by failing to provide "persuasive, specific, valid reasons for [declining to give substantial weight to the VA's disability ratings] that are supported by the record," Woods, 888 F.3d at 692.

## III. CONCLUSION

Plaintiff has established grounds for relief.[6]

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings that properly address Plaintiff's VA disability ratings in accordance with the Fourth Circuit's decisions in <u>Bird</u> and <u>Woods</u>. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) should be denied and Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) should be granted in part (i.e., to the extent it requests remand).

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

April 9, 2019

---

[6] Plaintiff's Memorandum alternatively asks for "judgment in her favor with a reversal of the ALJ's decision for an award of benefits or with a remand of the matter for a new hearing." (Docket Entry 9 at 13.) In this case, the Court should opt for remand for compliance with <u>Bird</u> and <u>Woods</u>, because Plaintiff's Memorandum does not develop any argument for remand for purposes only of awarding benefits (<u>see</u> <u>id.</u> at 1-13) and her reply expressly asserts that "remand is required so that the ALJ can comply with *Bird*" (Docket Entry 12 at 3).